**MINA HAKAKIAN (SBN 237666)**
mhakakian@wwlawcorp.com
**WILLIAMS WOLLITZ HAKAKIAN PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**NOVEON SURGERY CENTER, INC.**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **NOVEON SURGERY CENTER, INC.** | Case No.: 2:23-cv-0377 |
| Plaintiff, | |
| vs. | |
| **CIGNA HEALTH AND LIFE INSURANCE COMPANY,** DBA Cigna; **CONNECTICUT GENERAL LIFE INSURANCE COMPANY**, and **DOES 1 -100,** | **COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |
| Defendants. | |

Plaintiff, Noveon Surgery Center, Inc. ("Noveon" or "Plaintiff"") alleges as follows:

### I.     JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under

the Employee Retirement Income Security Act ("ERISA").

2.      This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and pursuant to 29 U.S.C. § 1132 (e)(2) because Defendants conduct a substantial amount of business in this Judicial District.

## II.    THE PARTIES

### A. The Plaintiff

3.      Noveon was a California corporation doing business in the County of Los Angeles, State of California.  Noveon was incorporated in the State of California in April 2015.

4.      Noveon operated as a physician-owned Outpatient Ambulatory Surgery Center (the "Facility") until 2021 when it closed its active operations.  Physician owned Ambulatory Surgery centers are regulated by the Medical Board of California as an "Outpatient Setting".  The Medical Board of California states that an Outpatient Setting that is owned and operated by a physician must be accredited through one of the agencies approved by the Medical Board of California, and it has designated the The Joint commission as an approved Accreditation Agency.  The Joint Commission is an independent, not-for profit organization that accredits and certifies nearly 21,000 healthcare organizations and programs in the United States, and its accreditation and certification is recognized nationwide as a symbol of quality.  Accreditation by the Joint Commission means that the surgical center facility has met the patient safety and quality standard that exists in the geographic area serviced by the facility, and Noveon was accredited and certified by the Joint Commission as of November 21, 2015.

5.      The surgery center facility operated by Noveon at 5620 Wilbur Ave,

Tarzana, CA 91356 maintained state of the art medical technology devises and other high-quality equipments necessary to carry out specialized surgical procedures for medical patients.  The types of procedures performed at Noveon's Facility included foot and ankle surgery, back surgery, epidural injections, ear, nose and throat surgery, septoplasty and related nasal surgeries, colonoscopies, gastrointestinal surgery, and general surgery.  Prior to closing its active operations in 2021, Noveon provided facility usage and related surgical services on behalf of a wide variety of individual patients, many of whom were insured under the terms of group health insurance plans that are governed by ERISA.

B. **The Defendant**

6.     Plaintiff is informed and believes that Defendant Connecticut General Life Insurance Company is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut, licensed and doing business in the State of California.

7.     Plaintiff is informed and believes that Defendant Cigna Health and Life Insurance Company is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut, licenses and doing business in the State of California.

8.     Plaintiff is informed and believes that Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (hereinafter jointly "Cigna" or "Cigna Defendants") are related corporate entities that work together under Cigna name and serve as the claims administrator and/or insurer of employee health benefit plans covered by ERISA (hereafter referred to as "ERISA Plans" or "Plan" or "Plans") that provide, among other benefits, reimbursement for medical expenses incurred by individual Plan participants and/or beneficiaries covered under the Plan.

9.     Plaintiff is informed and believes that Cigna performs its claims handling

– 3 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

services for a multitude of ERISA Plans, some of which are self-funded and some of which are funded by Cigna acting in its capacity as the insurance underwriter for the Plan. Whether the Plan is self-funded or fully insured, Plaintiff is informed and believes that Cigna provides plan members with plan documents, interprets and applies the plan terms, makes coverage and benefits determination, handles the appeals of coverage and benefits decisions, and makes payment to Medical Providers for services rendered.  In simple terms, Noveon is informed and believes that it was Cigna, and not the ERISA Plans themselves, that had the responsibility and actual control to make benefit determinations for the healthcare services claims of Novoen that gives rise to this benefit recovery action.

10.    Plaintiff is informed and believes that Cigna carried out its multiple services and functions as a healthcare-benefits claims administrator.  Acting with respect to eighteen members insured either under ERISA Plans or insured through Cigna's self-funded insurance during the period May 11, 2017 through August 7, 2019, Cigna reviewed and evaluated benefits payment claims for healthcare services and facility utilization at Novoen's ambulatory surgery center.  The services provided at Noveon facility on behalf of these patients typically encompassed the performance of a surgical procedure, accompanied by ancillary healthcare services such as anesthesiology, pre-operative functions and tasks, use of a surgery room facility and equipment, use of post-operative recovery room facility and equipment, pharmaceutical drug administration, use of medical supplies and a variety of other healthcare services necessary and reasonable in the performance of a surgical event. As discussed hereinafter in this Complaint, Plaintiff billed Cigna for its healthcare services and facility usage, but Cigna has materially and improperly denied/underpaid the benefit claim amounts due and owing to Noveon for the services rendered.

11.    In each claim circumstance prior to receiving services at Noveon each

patient signed an agreement assigning his or her ERISA Plan rights and benefits to Noveon in its entirety. Each such assignment of benefits provided for Noveon to be paid directly for the services provided to the patient, and Noveon has received a written assignment of benefits in connection with every outstanding benefit claim event at issue in this action. An exemplar of the form of assignment document utilized by Noveon in connection with the claims as issue in this case is attached hereto as Exhibit A.

12.     Noveon does not bring this suit against the ERISA plans for whom Cigna acted as administer or insurer in connection with Noveon's claims in this action. Plaintiff is informed and believes that Cigna, and not the ERISA plans themselves, exercised actual control over the determination and payment of the benefits claims submitted by Noveon. Plaintiff is informed and believes that Cigna acts as the primary point of contact for members and providers to communicate regarding all aspects of benefits and benefit determination. Plaintiff is informed and believes that Cigna is the responsible party for administering and interpreting the ERISA Plans at issue in this case and is the one solely responsible for the denial of benefits and therefore the proper Defendants in the case.

C. **The Doe Defendants**

13.     The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names. Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein. The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

## III.    CORE FACTS UNDERLYING THE NOVEON CLAIMS FOR PAYMENT

14.    Noveon provided healthcare services at its surgery center in Tarzana, California from May 11, 2017 to August 7, 2019 on Nineteen separate occasions for the ERISA Plan members and their dependents where the subject ERISA Plan was either administered and/or underwritten by Cigna.  In total, Noveon has performed nineteen (19) healthcare services events for eighteen (18) Plan members and/or dependents which are the subject of this lawsuit as identified in Exhibit B[1].

15.    The eighteen patients for whom surgical services were provided by Noveon in this case are designed by initials herein as Patients NH, AS, ZM, YN, KK, BM, IM, MC, DE, JO, JK, SH, CC, BF, RB, MH, EB, JH. Plaintiff is informed and believes that each of the Patients was or is a member or beneficiary of an ERISA Plan which has either been administered and/or underwritten by Cigna.  The patients and their participating Plans are as follows:

| PATIENT IDENTIFIER | PARTICIPATING PLANS |
| --- | --- |
| PATIENT NH | Coty Inc. |
| PATIENT AS | Regal Cinemas, Inc. |
| PATIENT ZM | Samba |
| PATIENT YN | Public Health Institute |
| PATIENT KK | Penny Mac |

---

[1]    The names and any identifying information about the insured patients are not set forth in this Complaint in order to preserve the protect patient privacy.  Plaintiff will make the identifying information available to Defendants pursuant to an appropriate protective order and will request that patient information also be subject to appropriate privacy protection during the course of the litigation proceeding in this Court.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

| PATIENT BM | Information Builders |
|------------|----------------------|
| PATIENT IM | Unknown at this time |
| PATIENT MC | NALC Health Benefit Plan |
| PATIENT DE | KSHP |
| PATIENT JO | Henry Schein, Inc. |
| PATIENT JK | Harris |
| PATIENT SH | Private National Mortgage |
| PATIENT CC | Pursue Good Health |
| PATIENT BF | Unknown at this time |
| PATIENT RB | Unknown at this time |
| PATIENT MH | Fuji Film |
| PATIENT EB | Imagine Communication |
| PATIENT JH | Prudential |

16.     When Plan members and/or their dependents came to Noveon for medical services they would present medical insurance cards in the name of Cigna, and the relevant insurance contact information on each medical insurance card would direct Noveon to Cigna office location and telephone number. A true and correct copy of an exemplar patient insurance card is attached hereto as Exhibit C.

17.     For each claim event at issue in this case, Noveon's custom and practice was to contact Cigna by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services.   The regular practice was that Noveon and Cigna would discuss the proposed surgery event by telephone in advance of the services being performed, and an in each such telephone communication the Cigna representative advised Noveon that coverage existed for the

patient and that benefits were properly payable to Noveon as an out-of-network provider.  The following sets forth in summary form the substance of the telephonic communications between Noveon and Cigna which occurred prior to services being performed in connection with the claims that are the subject of this lawsuit:

(a) For each claim event, Noveon would call Cigna's number identified on the member identification card presented by the patient.

(b) The answering party would identify himself or herself as a representative of Cigna, thereby confirming to Noveon that the communication was with an authorized claims administrator and/or underwriter for the ERISA Plan.

(c) In each claim call, the Noveon representative advised the Cigna representative of the identify of the Plan member or dependent; the CPT[2] code for the surgical procedure to be performed and that the purpose of the call was to verify the existence of coverage for the patient and the eligibility of Noveon for payment of benefits as an out-of-network provider.

(d) The Cigna representative responded by advising Noveon about the percentage of out-of-network billing covered under the Plan; the amount of patient deductible; and whether benefits would in fact be payable to Noveon based on the CPT code provided.  The Cigna representative also

---

[2]     CPT Code is the medical procedure descriptive identifier - - CPT means "Current Procedural Terminology". The CPT Code is a medical code maintained by the American Medical Association through the CPT Editorial Panel.  The CPT codes set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among physicians, coders, patients accreditation organizations, and payors for administrative, financial, and analytical purposes.

advised Noveon whether specific pre-authorization for the proposed surgical procedure was required. An exemplar copy of a verification call memorialization (for Patient JK) is attached hereto as Exhibit D)

18.    After the Cigna representative had verified that the specified treatment was covered and that Noveon was eligible for payment of ERISA Plan benefits, Noveon provided facility services for the surgery events for which verification was obtained.

19.    Noveon relied and reasonably relied on the Cigna telephonic representations with respect to Patients at issue in this case by providing surgery services to in response to the Cigna affirmation that Noveon was eligible to receive benefits.  But for the advance representations of the Cigna representatives in setting out the eligibility for benefits and the applicable payment methodology, Noveon would not have provided or continued to provide surgery services to the patients.

## IV.    NOVEON'S BILLINGS SUBMITTED TO CIGNA PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM PAYMENT

20.    After the Cigna representative had verified that the specified treatment was covered and that Noveon was eligible for payment of ERISA Plan benefits, Noveon provided the following facility services identified by CPT Code for the surgery events for which verification was obtained.

| PATIENT IDENTIFIER | DOS | CPT CODE |
| --- | --- | --- |
| PATIENT NH | 5/11/2017 | 30465; 30520; 30140:50; 20912 |
| PATIENT AS | 6/16/2017 | 30465; 30520; 30140:50; 20912; 69436 |
| PATIENT ZM | 6/16/2017<br>10/3/2017 | 30465; 30520; 30140:50; 20912<br>30520 |
| PATIENT YN | 6/23/2017 | 30465; 60520; 30140:50; 20912 |

| PATIENT KK | 7/11/2017 | 30465; 30520; 30140:50; 20912 |
|---|---|---|
| PATIENT BM | 8/4/2017 | 30465:50; 31255:50; 31267:50; 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT IM | 8/16/2017 | 14040 |
| PATIENT MC | 9/7/2017 | 42821; 30140:50 |
| PATIENT DE | 10/5/2017 | 30465;  31255; 31267; 31276; 31288; 30520; 30140; 20912; 61782 |
| PATIENT JO | 10/12/2017 | 30465:50 31255:50; 31267:50; 31276:50 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT JK | 11/21/2017 | 30465:50 31255:50; 31267:50; 31276:50 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT SH | 12/5/2017 | 30465:50; 30520; 30140:50; 20912 |
| PATIENT CC | 12/14/2017 | 30465:50 31255:50; 31267:50; 31276:50 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT BF | 1/26/2018 | 30465:50 31255:50; 31267:50; 31276:50 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT RB | 2/27/2018 | 30465:50; 30520; 30140:50 ; 20912 |
| PATIENT MH | 7/18/2018 | 30465:50 31255:50; 31267:50; 31276:50 31288:50; 30520; 30140:50; 20912; 61782 |
| PATIENT EB | 8/7/2019 | 30465:50; 30520; 30140:50; 20912 |

| PATIENT JH | 9/26/2018 | 4282; 30140:5 |
|---|---|---|

21.     In connection with each of the claims where services were provided, Noveon has billed Cigna for services rendered to ERISA Plan members and their dependents.  The Noveon billings were submitted on a standard UB04 form which identified the provider name, address, patient name, patient address, sex and ID number, the date of service, CPT Code and the nature of the services rendered.  Each of Plaintiff's claim billing forms set forth all requisite information in standard terminology with sufficient detail to enable Cigna to consider and pay the claim in the ordinary course of business. On each billing form submitted by Noveon, Noveon also marked a "Y" in box 53, which affirmed that Noveon was asserting its claim for payment pursuant to a patient assignment of benefits.  An exemplar of the claim form submitted with the patient's name and identifier redacted for privacy is attached hereto as Exhibit E.

22.     The charges for healthcare services submitted by Noveon to Cigna were in all instances usual, customary and reasonable and in accord with Noveon's charges to patients other than ERISA Plan members and dependents and/or to non-Medicare patients insured by entities other than the subject plans in this case.  Noveon's charges for services submitted to Cigna were also in accord with the charges of other medical service providers in the community who provided healthcare services comparable to those provided by Noveon. Cigna has abused its discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay Noveon's claims in accordance with ERISA requirements, practices and provisions and Noveon has suffered resulting damages in an amount to be proven at trial.

///

///

## V.   NOVEON HAS STANDING TO PURSUE CLAIMS AGAINST CIGNA UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

23.   ERISA governs all aspects of health and medical benefits under ERISA plans, and authorizes a civil action to recover unpaid benefits and attorney's fees. Noveon has standing to bring this lawsuit arising from its Assignments from patients.

24.   Cigna in this action is the proper party defendant for an ERISA benefits recovery action.  *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

## VI.   NOVEON HAS EXHAUSTED ALL ADMINSTRATIVE REMEDIES

25.   For the claim events in this action, Cigna provided Explanation of Benefits documents which purported to explain the payment denial with respect to Noveon billing submittals.  The EOBs were woefully deficient in their explanations of the purported grounding for the non-payment and/or reduction of Noveon's bills. The EOBs set forth different grounding in short format for Cigna's claim denial and/or payment reduction.  The short statements utilized by Cigna in the EOB did not provide any explanation or basis for denial at all.  For example for Patient CC, Cigna's grounding for a claim payment reduction was that the amount was reduced based on Viant's facility bill review program.  For Patient BM, Cigna's grounding for reduction was that Cigna will reimburse up to a set maximum amount known as maximum reimbursable Charge.  A statement that Noveon was reimbursed up to a set Maximum reimbursable charge or that the charges were reduced based on Viant's facility bill review program is a meaningless non sequitur, and provides no explanation or basis for reduction at all.  Such a vague and non-specific statement in EOB does not constitute a final determination with respect to the payment of

1  Noveon's bills.

2      26.  Cigna in their EOBs violated the applicable claims procedure regulations

3  governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1 (b).  Of particular

4  significance in this case are the regulations dealing with "Manner and Content of

5  Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1

6  (g)(1).  That section requires that the plan administrator shall provide a claimant with

7  a written or electronic notification of any adverse benefit determination.  The

8  regulations require the following:

9      "The notification shall set forth, in a manner calculated to be understood by the

10     claimant - -

11          i.   The specific reason or reasons for the adverse determination;

12          ii.  Reference to the specific plan provisions on which the

13               determination is based;

14          iii. A description of any additional material or information necessary

15               for the claimant to perfect the claim and an explanation of why

16               such material or information is necessary;

17          iv.  A description of the plan's review procedures and the time limits

18               applicable to such procedures, including a statement of the

19               claimant's right to bring a civil action under section 502(a) of the

20               Act following an adverse benefit determination on review."

21     27.   These notification requirements were not met by the EOBs in the present

22  action, and the regulations are specific about the consequence of a failure by Cigna to

23  comply with notification requirements in its EOBs.  29 C.F.R. section 2560.503-1(1)

24  provides:

25     "(l) Failure to establish and follow reasonable claims procedures:

26     In the case of the failure of a plan to establish or follow claims procedures

27
– 13 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND**
28
**COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

28.     Noveon is deemed by law to have exhausted administrative remedies because Cigna failed to establish and follow reasonable claims procedures as required by ERISA.  Cigna failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1.  Among other things, Cigna:

- Failed to set out the specific reason for underpayment/nonpayment of Plaintiff's claims in its responses transmitted to Plaintiff during the administrative review process;

- Failed to reference the specific Plan provisions upon which its underpayment/nonpayment determinations were based;

- Failed to give a description of additional materials or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the underpayment/nonpayment determinations were based;

- Failed to state the underpayment/nonpayment determinations in a manner calculated to be understood by Plaintiff;

- Failed to provide a reasonable opportunity for full and fair review of the nonpayment/underpayment determinations;

- Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff;
- Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor.

Copies of Patients BM and Patient CC EOB's evidencing failure by Cigna to comply with the statute are attached as Exhibit F.

## VII.   ASSIGNMENTS TO HEALTH CARE PROVIDERS ARE FAVORED UNDER ERISA LAW

29.     In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989) Ninth Circuit Court determined that the assignment of patient benefits under healthcare plans are a favored practice to ensure efficiency in the delivery of healthcare services.  "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA."  *Misic, supra,* at 1378. Assignees of a claim for collection of healthcare benefits have been permitted to bring suit on the basis of derivative standing.  *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare providers to whom beneficiaries had assigned their benefits claims after receiving medical care from such providers).  Granting standing to healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties.  *See id.*  The authority of *Misic* and *Simon* was recently reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.,* (9th Cir. No. 20-56122, January 14, 2022).

///

///

///

## VIII. CIGNA HAS WAIVED AND/OR ESTOPPED FROM ASSERTING ANY "ANTI-ASSIGNMENT" CLAUSES CONTAINED IN THE PATIENTS' HEALTHCARE PLANS

30.     Under federal ERISA law, a healthcare plan and its claim administrators are subject to well settled rules where benefits are to be denied with respect to claims of a healthcare provider.

31.     When making a claim determination under ERISA, "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spindex Physical Therapy USA Inc.  v.  United Healthcare of Ariz., Inc*., 770 F.3d 1282, 1296 (9th Cir.  2014) ("*Spindex*"); *Harlick v.  Blue Shield of Cal.*, 686 F.3d 699,  719 (9th  Cir.  2012) ("*Harlick*"). ("A Plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]")

32.     Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spindex*, 770 F.3d at 1296 (citation omitted).  However, a plan administrator can waive the right to enforce an anti-assignment provision. *See id*. at 1296-97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spindex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim process because "there [wa]s no evidence that [the claims administrator] was aware, or should have been aware, during the administrative process that [the plaintiff-medical provider] was acting as its patient's assignee").

33.     Waiver is "the intentional relinquishment of a known right." *Gordon v. Deloitte & Touche LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014) (citing *Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1559 (9th

1    Cir. 1991) (Waiver occurs when "a party intentionally relinquishes a right, or when

2    that party's acts are so inconsistent with an intent to enforce the right as to induce a

3    reasonable belief that such right has been relinquished.")).  To show that a claims

4    administrator waived an anti-assignment provision that would otherwise foreclose the

5    healthcare services provider from having statutory standing in an ERISA action, the

6    provider must plead sufficient facts to show that the plan administrator "was aware or

7    should have been aware, during the administrative [claim] process that [the provider]

8    was acting as its patients' assignee." *See Spinedex*, 770 F.3d at 1297.  Noveon has

9    pleaded waiver facts in this action.  Each billing form included an "X" which notified

10   the claims administrator that the claims was being pursued by way of an assignment in

11   the "ASG BEN." box.  Moreover, Cigna has made partial payments for thirteen claims

12   (albeit it underpaid) out of the nineteen claims that are part of this lawsuit.  Cigna has

13   waived any purported anti-assignment clause in any of the ERISA Plans and Cigna is

14   estopped from asserting any such clause.

15        34.    Cigna at all relevant times was aware that Plaintiff was pursuing its

16   claims on the basis of written assignments of benefits.  At no time prior to the filing

17   the present litigation has Cigna ever asserted that any bar or legal impediment existed

18   in the Plans with respect to Plaintiff's unfettered right to receive payment of benefits

19   as an Out-of-Network provider under the Plans.  Specifically, Cigna never stated any

20   intention to assert any anti-assignment clause during the pre-litigation administrative

21   review process.

22        35.    Cigna is estopped from asserting anti-assignment by the fact that it

23   represented that Noveon was eligible to receive plan benefits.  *See Beverly Oaks*

24   *Physicians Surgery Center, LLC v. Blue Cross and Blue Shield of Illinois,* 983 F. 3d

25   435 (9th Cir. 2020) ("*Beverly Oaks*").  A promise that Noveon was eligible to receive

26   plan benefits as an out-of-network healthcare provider is sufficient to estop Cigna

27

28

1 | from asserting a plan anti-assignment clause in this case.

2 | **IX.   CIGNA HAS NO GROUNDING TO ASSERT STATUTE OF**
3 | **LIMITATIONS WITH RESPECT TO NOVEON'S CLAIMS**

4 | **A.      Cigna Failed To Provide A Final Determination; And Accordingly,**
5 | **No Statute Of Limitations Has Begun To Run**

6 | 36.      After *Beverly Oaks* was decided on December 18, 2020, this Court's
7 | determination became the subject of a District Court opinion issued May 25, 2021 in
8 | *Brand Tarzana Surgical Institute, Inc. v. Aetna Life Insurance Company, Inc., et. al.,* Case
9 | No. 18-9434 DSF (AGRx) ("*Brand v. Aetna*").  In its Order involving anti-assignment
10 | defenses (Dkt. 72), the District Court in *Brand v. Aetna* concluded that there was no
11 | final determination in that case due to a failure of the insurer to submit adequate
12 | notification of adverse benefits determinations:

13 | > Aetna argues some claims are untimely because some of the plans
14 | > limit the time period in which one must seek recovery, and Brand's lawsuit is
15 | > outside those time periods. Br. at 14-17; Aetna Suppl. Br. at 16-17. However,
16 | > given the inadequacies of the adverse benefit notifications discussed above,
17 | > there was no final decision on those claims. The contractual limitations
18 | > therefore do not apply.  (Dkt. 72, p. 8)

19 | 37.      The District Court in *Brand v. Aetna* cited to earlier Ninth Circuit
20 | authority as the basis for its statute of limitations determination:

21 | > *White v. Jacobs Engineering Group Long Term Disability Benefit Plan*,
22 | > 896 F.2d 344, 350 (9th Cir. 1989) supports this conclusion. In *White*, the Ninth
23 | > Circuit held that "[w] hen a benefits termination notice fails to explain the
24 | > proper steps for appeal, the plan's time bar is not triggered." *Id*. (Dkt. 72, p. 8-9)

25 | 38.      The *Brand v. Aetna* court grounded its statute of limitations
26 | determination on the ERISA claims procedures regulations:

27 |
28 |

In reaching its decision, the Ninth Circuit [in *White*] reasoned that an administrator should not be permitted to deter a claimant from filing a timely appeal "by sending vague and inadequate appeal notices, withholding information claimants need to appeal effectively." *Id*. at 351. (Dkt, 72, p. 9)

39.     The District Court in *Brand v. Aetna* found the reasoning in *White* was applicable to contractual time limits for filing a civil action in addition to an administrative appeal. The District Court cited to *Bourgeois v. Employees of Santa Fe International Company*, 215 F.3d 475, 482 (5th Cir. 2000) (holding where an employer's failure to give an employee adequate claims procedure information caused the employee to fail to exhaust his administrative remedies and extinguished the employee's time to apply for benefits, his claim should be remanded to the plan administrator and the employer was estopped from arguing the employee's claim was time-barred); and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012) (holding a district court abused its discretion by finding a claim was time-barred because the letter outlining administrative remedies and time to sue was ambiguous and "[a] communication from a claims administrator to a plan participant should clearly apprise her of her rights and obligations under the plan"); and *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006) (finding the failure to comply with ERISA's notification procedures was a "highly significant factor" for determining whether the statutory limitations period began running).

40.     Similarly in the present action, the Cigna EOBs failed to provide adverse benefits notification sufficient to trigger the running of a statute of limitations.  Absent a final determination, the Plaintiff claims remain fully open for further administration claim consideration and claim resolution at trial.

///

///

**B.    A Three-Year Period of Equitable Tolling Applies To Preclude Cigna From Asserting Statute of Limitations as a Defense to the Claims Asserted by Noveon in this Action**

    **(1)    California Law Applies For Statute of Limitations Purposes As The State Where The Claims Arose**

41.    The statute of limitations in this case is subject to equitable tolling for the period December 18, 2017 to December 17, 2020.  All of the subject claims fall within the statute if equitable tolling is applied.

42.    ERISA is silent as to the statute of limitations to be applied to the benefits claims asserted by Noveon in this case.  Where a statute of limitations is lacking in federal court litigation, the District Court is to look to and apply (i.e. borrow) the most analogous state statute.  The Ninth Circuit has ruled that the applicable borrowing statute in the context of an action for ERISA benefits is the state where the claim for benefits arose.  *Gordon v. Deloitte & Touche LLP Group Long Term Disability Plan,* 749 F. 3d 746, 750 (9th Cir. 2014) (citing *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance Program,* 222 F. 3d 643 (9th Cir. 2000).

43.    In the present case, the claims for benefits arose in California, and the applicable statute is the 4-year California statute for breach of contract.  *See Northern Cal. Retail Clerks v. Jumbo Markets, Inc.* 906 F. 2d. 1371, 1372 (9th Cir. 1990) However, when a statute of limitations is borrowed, the tolling and suspension provisions which are part of the statute under applicable state law must also be borrowed in the federal court action, and in the present case California equitable tolling provisions will apply to extend the application of the statute.  *See, also, Heimeshoff v. Hartford Life & Accident Ins. Co.,* 571 U.S. 99, 113 (2013) (equitable tolling of a statute of limitations may be appropriate in extraordinary circumstances).

**(2)** **Waiver And Estoppel Apply and Provide a Grounding For Equitable Tolling of the Statute of Limitations**

44.    The Supreme Court in *Heimeshoff* stated (571 U.S. at 104) that waiver and estoppel may prevent a claims administrator from invoking a limitations period as a defense.  Here, waiver and estoppel both apply to preclude Cigna from asserting statute of limitations without an extension for a 3-year equitable tolling period, as defined below.

**(3)** **Equitable Tolling Begins To Run No Later Than December 18, 2017 And Continues To Apply Until December 17, 2020**

45.    It appeared to be settled law in the Ninth Circuit from and after 2014 that waiver of an anti-assignment clause by a healthcare plan claims administrator would occur if the administrator was aware, or should have been aware during the administrative process that a healthcare provider was asserting claims pursuant to a patient assignment.  *Spinedex, supra,* 770. F. 3d at 1296-97.  Under *Spinedex,* and the Ninth Circuit's 2012 decision in *Harlick*, a healthcare claims administrator was barred by waiver and estoppel from failing to give a reason for a benefits denial during the pre-litigation claim administration process and then raising that reason for the first time when the denial of plan benefits was challenged by the healthcare provider in federal court.

46.    Despite what should have been a controlling body of Ninth Circuit law, a District Court in the Central District of California in 2016 struck out in an unexpected and erroneous new direction in the handling of anti-assignment clauses.  In the case of *Brand Tarzana Surgical Institute, Inc. v. International Longshore & Warehouse Union-Pacific Maritime Association Welfare Plan*, District Court No. 2-14-cv-03191-FMO-AGRx ("*Brand Tarzana v. ILWU*") the District Court entered an Order

Regarding Cross Motions for Summary Judgment on March 8, 2016. (Dkt. 69)  In its

Order, the District Court concluded that Plaintiff Brand Tarzana had failed to prove

waiver of an anti-assignment clause that was contained in the ILWU-PMA Welfare

Plan which was the subject of that case.  The District Court Order dated March 8,

2016, concluded that the Plan's failure to raise the anti-assignment clause prior to

litigation did not constitute waiver, since the anti-assignment clause was not "a

substantive basis for denial" (Dkt 69, p. 15)  The District Court wrongly concluded in

*Brand Tarzana v. ILWU* - - in direct contradiction to the controlling authority of

*Spinedex* and *Harlick* - - that the failure to raise the anti-assignment clause was

irrelevant to a pre-litigation denial of a healthcare claim since, until a suit was filed,

there was nothing  that occurred within the range of conduct the anti-assignment

clauses purported to prohibit.  (Dkt. 69, pp. 15-16) In the *Brand Tarzana v. ILWU*

circumstance, where none of the claims at issue were denied in the pre-litigation

administrative claim process on the basis of the anti-assignment clause, the District

Court erroneously decided that any failure to raise the clause pre-litigation as a ground

for denial of plaintiff's claims did not constitute a waiver of the provision.  (Dkt. 69,

p. 16) This District Court ruling on March 8, 2016 put in place an unfortunate and ill-

conceived framework for addressing anti-assignment clauses which rendered it

impossible for healthcare providers to file and pursue ERISA benefits recovery

lawsuits where the subject ERISA plans contained an anti-assignment provision.  The

erroneous framework which was adopted by the District Court in 2016 was

subsequently put aside on December 17, 2020 when the Ninth Circuit put anti-

assignment law back on a proper footing in its published *Beverly Oaks* decision, <u>but

until corrective action was taken in *Beverly Oaks* in 2020, healthcare providers such as

Noveon had no realistic or viable means of pursuing their assignment-based

healthcare claims in federal court</u>.  In the present action, the healthcare claims which

1  arose during the period when Ninth Circuit law was premised on a mistaken
2  conceptual framework favoring anti-assignment and the claims where the right to sue
3  matured during this time frame should be subject to equitable tolling.

4       47.     Brand Tarzana immediately appealed the adverse District Court ruling of
5  March 8, 2016. *See* Ninth Circuit Case No. 16-55503, *Brand Tarzana Surgical*
6  *Institute, Inc v. ILWU-PMA Welfare Plan,* 706 F.App'x 442 (9th Cir. 2017). However,
7  the Ninth Circuit panel that heard the case on appeal affirmed the District Court ruling
8  by way of a Memorandum Decision filed December 18, 2017. (Dkt. 76) <u>The Ninth</u>
9  <u>Circuit in *Brand Tarzana v. ILWU* erroneously agreed with the District Court that the</u>
10 <u>anti-assignment clause could indeed be held in reserve during the pre-litigation claims</u>
11 <u>administrative process, and then be put forward for the first time in benefits recovery</u>
12 <u>litigation as a "litigation defense".</u>

13      48.     The legal issue of anti-assignment clauses as a "litigation defense" was
14 the subject of ongoing litigation over a period of three years from the time the *Brand*
15 *Tarzana v. ILWU* Memorandum Decision was entered in the Ninth Circuit (December
16 18, 2017) to December 17, 2020 when the published opinion in *Beverly Oaks* was
17 issued which put the anti-assignment issue to rest once and for all. The Ninth Circuit
18 filed its published opinion in *Beverly Oaks,* on December 17, 2020, which effectively
19 repudiated and reversed its earlier *Brand Tarzana v. ILWU* Memorandum Decision.
20 Anti-assignment in the case of *Brand Tarzana v. ILWU* had been considered a
21 "litigation defense" and not a substantive basis for claim denial - - but this "litigation
22 defense" framework only lasted in this Circuit for three years until it was rejected in
23 *Beverly Oaks* on December 17, 2020. The *Beverly Oaks* panel decided that there was
24 "no rationale" for condoning an insurer or plan administrator's course of conduct in
25 failing to raise the anti-assignment provision during the administrative claims process
26 and then later asserting that provision as a "litigation defense" to avoid payment of

27

28

benefits.  The *Beverly Oaks* Court found that the *Brand Tarzana v. ILWU* "litigation defense" framework as a basis to deny waiver of the anti-assignment clause left an insurer or plan administrator unaccountable for prior conduct contrary to its litigation provision.

49.    Indeed, taking it a step further, the *Beverly Oaks* Court further concluded that Blue Cross in that case made an actionable misrepresentation to the surgery center plaintiff in *Brand Tarzana v. ILWU*, by stating that plaintiff was "eligible' to receive plan benefits.  The *Beverly Oaks* Court in its published opinion of December 17, 2020 concluded that this misrepresentation estopped Blue Cross from asserting the anti-assignment defense.

50.    Waiver and estoppel apply in this case to preclude an anti-assignment defense, just as they did in *Beverly Oaks,* and *Beverly Oaks* reopened the door for filing of ERISA benefits recovery actions by healthcare providers based on patient assignments of benefits.  The statute of limitations should be tolled for the three-year period in which the door to benefits recovery was improperly closed.

C.    **California Emergency Rule 9 Tolls the Statute of Limitations for 178 days between April 6, 2020 to October 1, 2020**

51.    On March 4, 2020 Governor Gavin Newsom declared a state of emergency in response to the spread of Covid-19 in California. On March 19, a state wide stay-at-home order was issued.  On March 27, 2020 Governor Newsom issued Executive Order N-38-20 which, among other thing, gave the Judicial Council of California the authority to take actions necessary to maintain access to the essential operation of California's court system while protecting the health and safety of California residents.  Over the course of several months in 2020, the Judicial Council adopted 13 emergency Rules.

///

52.     Amongst the 13 emergency rules is the emergency Rule 9 which is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action. Under Emergency Rule 9, Statute of Limitations that exceed 180 days are tolled between April 6, 2020 and October 1, 2020 (Total of 178 days). Noveon proceeds with the claims against Cigna based on the tolling of the statute of limitations during the period between April 6, 2020 to October 1, 2020 premised upon California Emergency Rule 9.  None of Noveon's claims should be barred by the statute.

**D.     The Statute of Limitations for Breach of Contract does not begin to run until the Contract no Longer is Executory**

53.     The Supreme Court in *Mather v. Mather* (1944) 25 Cal.2d 582, 586 stated:

> [T]the law recognizes, as a matter of classification, two kinds of contracts - - executory and executed.  The former is one in which some acts remain to be done, while the latter is one where everything is completed at the time of agreement, without any outstanding promise calling for fulfillment by the further act of either party.

54.     In general, insurance policies including health insurance plans require the policyholder to share a portion of the future financial risk covered by the policy either through deductibles, self-insured retentions or retrospective premiums. In healthcare insurance policies where the insurer has a continuing obligation to provide coverage and the insured has a continuing obligation to pay a standard premium, deductible, and co-pay, an insurance contract is an executory contract.  The insurance policy in essence is an agreement for the insured to pay the insurer for continuously providing coverage and therefore is an executory contract.

///

55.     Under California law, statutes of limitations for breach of contract do not commence to run as long as the contract is executory. In *Lubin* v. *Lubin* (1956) 144 Cal.App.2d 781, 791 the court stated:

> "In those cases where a continuing contract involves the rendering of benefits to the plaintiff before the date for final performance the rule is as stated in 16 California Jurisprudence, section 110, page 511: 'In the case of a continuing executory contract, if the parties do not mutually abandon and rescind it, it is optional with the plaintiff to sue immediately upon the breach or to wait until the expiration of the time designated in the contract before commencing his action.' " *Oil Base, Inc. v. Cont'l Cas. Co.* (1969) 271 Cal. App. 2d 378, 389–90 (citations omitted).

56.     In *Oil Base*, the insured sued the insurer for breach of contract and reformation. The trial court entered judgment for the insurer based on its determination that the claims were barred by the statute of limitations.  The Court of Appeal reversed based on the continuing executory nature of the liability insurance policy issued by Continental.  Similar to *Oil Base,* Cigna as the insurer has a continuing duty to provide coverage under the health insurance plan for covered services and the patients/insured likewise have the continuing obligation under the policy to pay their premium in installments and cover their co-pay and deductibles for the services received.

57.     Each Insurance Plan in this action remains executory as long as the Insured/Patient/Beneficiary has premium payment obligations, deductible and co-payments and Cigna has a continued obligation to provide coverage for services rendered. As the obligations of the insured/beneficiary/patient to pay co-pay and deductible and/or premium continues and Cigna's obligations to pay for covered expenses continues with respect to claims in Exhibit B, the statute of limitations has

not matured and has not begun to run until either the duty to pay premium, co-pay and/or deductible has extinguished, or the ERISA Plan has been rescinded or terminated by Cigna. None of Noveon's claims should be barred by the statute.

## FIRST COUNT

### (Against Cigna Health and Life Insurance Company; and Connecticut General Life Insurance Company)

### Enforcement Under 29 U.S.C. Section 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. Section 1132 (G)(1)

58.     The allegations of the prior paragraphs (paragraphs 1 to 57) of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

59.     This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with ERISA Plans administered and/or underwritten by Cigna.

60.     Noveon seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. section 1132 (a)(1)(B); and under 29 U.S.C. section 1132 (g)(1) for recovery of reasonable attorney's fees and costs. Noveon has standing to pursue these claims as the assignee of member benefits. As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. section 1132 (a)(1)(B) to be brought directly against Cigna Defendants as the parties with actual control over the benefit and payment determinations with respect to Noveon's claims.

61.     By reason of the foregoing, Noveon is entitled to recover ERISA benefits for the services rendered to patients identified in Exhibit B due and owing in an

amount to be proven at trial, and Noveon seeks recovery of such benefits by way of the present action.

62.     29 U.S.C. section 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  Noveon has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Cigna Defendants as follows:

1. For damages against Cigna Defendants in an amount to be proven at trial in connection with the healthcare benefits claim properly due and payable with respect to the services rendered to the Patients identified in Exhibit A hereto under the terms of the ERISA Plans at issue in this case.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial. For such other relief as the Court may deem just and proper.

**Dated:** January 18, 2023                Respectfully submitted,

**WILLIAMS WOLLITZ HAKAKIAN PC**


By:     /s/ Mina Hakakian

Mina Hakakian
Attorneys for Noveon Surgery Center, Inc.

– 28 –
COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)